**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(DALLAS DIVISION)**

| | | |
|---|---|---|
| **GRAND TIME CORPORATION** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No.  3:08-cv-1770-K** |
| **WATCH FACTORY, INC.; TIME** | § | |
| **FACTORY, INC.; and NAZ, INC. doing** | § | |
| **business as A N ENTERPRISES, &** | § | |
| **FINE WATCHES CORPORATION** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

---

**PLAINTIFF GRAND TIME CORPORATION
MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW Plaintiff/Counter Defendant GRAND TIME CORPORATION ("GTC")

files this Motion for Summary Judgment (the "MSJ") as to the Defendant/Counter Plaintiff

WATCH FACTORY, INC.'s ("WFI") claims of Breach of Contract, Misappropriation of Trade

secrets, Unfair Competition (Texas), and Unfair Competition (Lanham Act), and in support

shows the following:

## I.

## <u>INTRODUCTION</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to material fact and that the moving party is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(c). The moving party has the burden of showing that there is no genuine issue as to a

material fact and that the moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In making this determination, the court will review the evidence in the record and disregard the evidence favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 135, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the record, viewed in this light, could not lead a rational trier of fact to find for the party opposing the motion, summary judgment is proper.

## II.

### COUNT IV.

### BREACH OF CONTRACT

### (THIRD CAUSE OF ACTION)

1.      In its Counter Complaint, WFI sued GTC for Breach of Contract alleging contract damages in the amount of $13,266.15 relating to invoices WF/LA2055 ($5,275.15), WF/LA2019

($7,991.00) (the "WFI Invoices").[1]   There has been full payment by GTC of the WFI Invoices

sued upon by WFI, and therefore it is a legal impossibility for GTC to breach any contact for

payment of said invoices.  WFI's Breach of Contract claims rests on the following events:

> 14. …The invoices are attached hereto as **Exhibit '1'** and are incorporated herein by reference for all purposes. Watch Factory, Inc. forwarded the invoices for Grand Time Corporation's order of 'Just Bling' watches.

> 15.    Prior to 2009, the aforesaid invoices became due and owing. Grand Time Corporation breached on the agreement wherein it _failed to pay Watch Factory, Inc_.

> 16. As a result of the above, Defendant/Counter-Plaintiff, _Watch Factory, has been damaged in a sum of $13,266.15_.[2]

2.      The WFI Invoices, the subject of the GTC's Breach of Contract claim, have been

paid in full.[3]   GTC submitted, and WFI cashed, three checks: check #1793 ($4,000.00), check

#1794 ($3,991.00), and check #1813 ($5,275.15), for a total payment of $13,266.15 (the "GTC

Payments").  Each GTC Payment specifically references the WFI Invoice for which payment

was tendered, and WFI has endorsed each GTC Payment.  The GTC Payments were written and

signed for by GTC representative Shabeena Meghani.  The WFI Invoices for which the GTC

Payments were tendered are specifically referenced on the checks (i.e. for Check #1793,

"WF/LA 2019" was written in the memo line,  for Check #1794, "WF/LA 2019" was written in

the memo line; and for check #1813, "WF/LA 2055" was written in the memo line.)[4]

---

[1] See Exhibit B, ECF 18-3; WFI invoices WF/LA2055 ($5,275.15), WF/LA2019 ($7,991.00).

[2] See Exhibit A, ECF 32; WFI Counter Complaint, Paragraph 14, 2nd to last sentence, and Paragraphs 15 and 16.

[3] See Exhibit C, Certified Records of Bank of Texas Invoice showing GTC's full payment of the WFI Invoices: check #1793 ($4,000.00), check #1794 ($3,991.00), and check #1813 ($5,275.15), for a total payment of $13,266.15.

[4] See Exhibit C, Certified Records of Bank of Texas Invoice showing GTC's full payment of the WFI Invoices: check #1793 ($4,000.00), check #1794 ($3,991.00), and check #1813 ($5,275.15), for a total payment of $13,266.15.

3.     The WFI Invoices and the GTC Payments both total *"13,266.15."*  There is no money due from GTC to WFI.[5]

4.     For the aforementioned reasons, the Court should grant GTC's Motion for Summary Judgment as to WFI's Breach of Contract cause of action.

## III.

## COUNT V.

## MISAPPROPRIATION OF TRADE SECRETS

## (FOURTH CAUSE OF ACTION - TEXAS)

5.     Whether a trade secret exists is usually a question of fact to be decided by the judge or jury as a factfinder.  *Gen. Universal, Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004). To determine the existence of a trade secret, a factfinder must examine six relevant but non-exclusive criteria: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Id.* (citing *In re Bass*, 113 S.W.3d 735, 740 (Tex. 2003)). "The status of information claimed as a trade secret must be ascertained through a comparative evaluation of all the relevant factors, including the value, secrecy, and definiteness of the information as well as the nature of the defendant's misconduct." *Id.* (citing Restatement (Third) of Unfair Competition, § 39).

---

[5] Exhibit D, Affidavit of Shabeena Meghani.

6.     WFI has affirmatively admitted that there are no trade secrets and no confidentiality agreements with GTC:

> "Q.     (BY MR. WILSON)  What trade secrets are you alleging -- are you alleging that Grand Time misappropriated trade secrets of Watch Factory, Inc.?
>
> A.     They did it.  Grand Time did it.
>
> ***Okay.  But there's no confidentiality agreement regarding the trade secrets?***
>
> A.     ***That's why they broke because there's no agreement as such.***
>
> Q.     What did you do to protect your trade secrets from Grand Time?
>
> ***THE INTERPRETER:  He says there is no secret in this business.  There is no secret.***
>
> Q.     (BY MR. WILSON)  Okay.  So --
>
> MR. FEIN:  Object to nonresponsive.
>
> Q.     (BY MR. WILSON)  So what trade secret did Grand Time misappropriate?
>
> *A.*     ***They didn't break -- they didn't violate any trade secrets, but they used of a name and got that product logistic in our name."*** [6]

---

[6] See Exhibit E, Budwani Non-Confidential Dep. at18.

7.        In *Astro Tech., Inc. v. Alliant Techsystems, Inc.*, 2005 U.S. Dist. LEXIS 46248 (S.D. Tex. Sept. 28, 2005), the Court reasoned the following: **"**Additionally, Beckwith's definition would improperly include "marketing concepts and new product ideas," "business possibilities or goals," and "undeveloped ideas and plans" that are not protected as trade secrets. *See, e.g., Linkco, Inc. v. Fujitsu Ltd.,* 230 F. Supp. 2d 492, 499-500 (S.D.N.Y. 2002); *see also Gonzales v. Zamora,* 791 S.W.2d 258, 264 (Tex. App. -- Corpus Christi 1990, no pet.).  Like in *Astro*, WFI attempts to claim a "concept, design, business model and marketing of watches with the name 'Just Bling'" as a trade secret. [7]  Such items cannot be trade secrets.  Thus, in addition to stating there are no trade secrets related to any concept, design, or business model, WFI affirmatively states that they have no "marketing strategies" related to Just Bling:

> "Q.     Okay.  With regards to No. 9 on Exhibit B of
>
> Exhibit 1, is it your testimony that you have no
>
> documents responsive evidencing your marketing strategy
>
> for Just Bling?
>
> MR. FEIN:  Object to the form of the
>
> question.  Assumes facts contrary to the evidence.
>
> THE INTERPRETER:  He says, "I support my
> attorney," what he says.
>
> MR. FEIN:  You can't do that.
>
> MR. WILSON:  You can't do that.
>
> MR. FEIN:  Answer the question.
>
> THE INTERPRETER:  He says, "We are

---

[7] See Exhibit A, WFI's Counter Complaint (ECF 23), *Paragraph 18*

producing, making, manufacturing this kind of watch for

about 30 years now."

A.     We don't have a particular strategy. We have

old customers. So we keep dealing with them.

Q.     (BY MR. WILSON) Okay. So you don't have any

marketing strategy for --

A.     We don't need that.

Q.     Okay. So -- but -- so you don't need any

marketing strategy to market your Just Bling products?

A.     Just Bling name that we can produce. ***We don't***

***have any specific marketing strategy for any kind of***

***parts, any brand of part, we don't have.''***[8]


8.     For the aforementioned reasons, and because WFI affirmatively admits that GTC

did not misappropriate any trade secrets, the Court need not entertain any analysis of the six (6)

elements set forth in *Gen. Universal, Sys., Inc. v. Lee, id.* The Court should grant GTC's Motion

for Summary Judgment as to WFI's Misappropriation of Trade Secret cause of action.


## IV.

## **COUNT II.**

## **UNFAIR COMPETITION**

## **(FIRST CAUSE OF ACTION – LANHAM ACT)**

---

[8] See Exhibit E, Budwani Non-Confidential Dep. at 19.

9.     Unfair competition claims arise pursuant to both state and federal law. A plaintiff can bring a federal unfair competition claim under § 43(a) of the Lanham Act. 15 U.S.C. § 1125; *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003). To state such a claim, a plaintiff must allege that he had valid ownership of a mark, and that defendant's use of the mark in commerce creates a likelihood of confusion as to the origin, sponsorship, or affiliation of his goods. *Lonestar Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997); *Group, Inc. v. Balser Wealth Management*, 2007 WL 1111239, at *2 (S.D. Cal. April 10, 2007) (citing *Comedy III Prod. Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000)); *Knights Armament Co. v. Optical Systems Technology*, 568 F.supp.2d 1369, 1375 (M.D. Fla. 2008). To establish valid ownership, a plaintiff must show that he had superior rights to use the mark in question – that he was not only the first to invent or register the mark but also the first to actually use the mark in commerce. *Board of Supervisors for La. State Univ. Agricultural & Mechanical College v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007); *P Daussa Corp. v. Sutton Cosmetics(P.R.) Inc.*, 462 F.2d 134, 136 (2d Cir. 1972).

10.     GTC is the owner of the mark "Just Bling" and not WFI.  WFI's actions are inconsistent with those of a trademark owner.  WFI has admitted that is had an exclusive relationship with GTC for the custom manufacture and supply of "Just Bling" product to GTC.  GTC's expert, Molly Richard, states the following:

> "Based upon my review of the invoices produced by Watch Factory, it appears that all of the JUST BLING watches were sold to Grand Time Corporation, with the exception of one shipment of watches to Fashion Time, from November of 2006 through approximately the middle of March of 2008.  Watch Factory's sales

of JUST BLING watches after March of 2008 were sporadic and, according to the testimony of Watch Factory's representative and pleadings filed by Watch Factory those sales were to other vendors solely to satisfy the amounts owed to Watch Factory from Grand Time Corporation.  Based upon my experience, if a party believes that it is the owner of a watch brand, they would not sell those branded watches exclusively[9] to one party and they would not excuse their sales of watches under that brand as a mitigation of damages.

According to the single invoice produced by Watch Factory showing sales of JUST BLING watches to Fashion Time dated November 20, 2006, the invoice indicates that those goods were shipped from the Houston office of Watch Factory because the invoice did not contain the designation "LA".  However, Mr. Charania, the former manager of the Houston office of Watch Factory testified that he had never seen that invoice to Fashion Time and he did not send those goods to Fashion Time from the Houston office.  He testified that he only sold the JUST BLING watches to Grand Time/Watch Gallery while he was with Watch Factory."[10]

11.     WFI affirmatively admits in its Response to GTC's Partial Motion to Dismiss and in its Original Counterclaim that it sought GTC's approval to sell goods branded with "Just Bling":

"***In order to mitigate its damages***, Watch Factory sold "Just Bling" watches ordered by Grand Time to other vendors to satisfy the amounts owed by Grand Time."[11]

---

[9] See ECF 40; Watch Factory's Response to Plaintiff's Partial Motion to Dismiss, Paragraph 33.

[10] See Exhibit F, Expert Report of Molly Buck Richard, p. 3, Paragraph 2 &3.

[11] See ECF 40; Watch Factory's Response to Plaintiff's Partial Motion to Dismiss, Page 1-2, Paragraph 1, last sentence.

"Thereafter, ***Grand Time instructed Watch Factory*** to sell its ordered "Just Bling" watches in an attempt to minimize its damages."[12]

"Once Grand Time found out that Watch Factory had not trademarked "Just Bling", it proceeded to register "Just Bling" at the United States Patent and Trademark as its own trademark. Watch Factory also filed for trademark but in the race to the U.S. Patent and Trademark office Grand Time obtained its trademark. ***Thereafter, it proceeded to institute this action against the Defendants including Watch Factory even though it had authorized the sale of the watches by Watch Factory.***"[13]

A further comparison of the invoices provided by WFI and GTC, as well as an analysis of the USPTO filings, conclusively shows that GTC was the first to use the "Just Bling" mark in interstate commerce:

"In March of 2007, Grand Time contacted an attorney and indicated its interest in registering the JUST BLING trademark[14]. Grand Time filed an application to register the trademark JUST BLING with the United States Patent and Trademark Office on June 8, 2007 and the application matured to registration on May 6, 2008. Grand Time stated that its date of first use was November of 2006, which is consistent with its first sales of the JUST BLING watches[15]. From my review of the documents, it appears that Grand Time had its first sale of JUST BLING watches to two different parties on November 15, 2006, one day after it apparently received the watches from its manufacturer, Watch Factory[16].

I also note that Watch Factory filed its own application to register the JUSTBLING trademark on July 3, 2007, stating that it first used the mark on

---

[12] See Exhibit A, WFI's Counter Complaint (ECF 23), p.1, Paragraph 1, Last Sentence.

[13] See Exhibit A, WFI's Counter Complaint (ECF 23), p. 1, Paragraph 1, Last Sentence.

[14] See Exhibit G; GT 03954 through GT 03956

[15] See Exhibit G; GT 02614 and 02615.

[16] See Exhibit G; GT 02614 and 02615 with WF 0006.

December 13, 2006. Watch Factory also filed a separate trademark application for the mark BLINGSTAR with the United States Patent and Trademark Office on the same date that it filed for the mark JUSTBLING. From my review of the specimens submitted with these applications, the JUSTBLING and BLINGSTAR watches appear to be very similar in style. In my opinion, it is unusual for a brand owner to use two brands that have similar styles and similar marks as they would generally compete with one another."[17]

Further, WFI , through Rafique Bhudwani in his confidential transcript, testified that WFI's first sale was either GTC or a third party.[18] Mr. Budwani could not remember who WFI sold to first; however, Mr. Bhudwani testified WFI's first sale to said third party occurred on November 20th, 2006, five (5) days after GTC's first sale on November 15, 2006.[19] Therefore, GTC has established it was the first to use the mark in interstate commerce.


12.    There are many, many examples of WFI and GTC's relationship which clearly show that GTC is the trademark owner beyond just the first commercial use date:

(a) GTC has sole responsibility for dealing with all customer complaints for Just Bling watches manufactured by WFI.

"Q.    And Grand Time Corporation is responsible for

dealing with customer complaints regarding defective

---

[17] See Exhibit F, Expert Report of Molly Buck Richard, Page 4, Paragraph 2.

[18] See Exhibit J, Bhudwani Confidential Dep. at Exhibit 8. The name of this third party is set forth in the Confidential Transcript of Rafique Bhudwani, it is withheld pursuant to the current Confidentiality Order adopted by the Court.

[19] See Exhibit J, Bhudwani Confidential Dep. at 19.The name of this third party is set forth in the Confidential Transcript of Rafique Bhudwani, it is withheld pursuant to the current Confidentiality Order adopted by the Court.

watches?

*A.* **Because they got us to make for them. It's not**

**the responsibility of the manufacturer, and we never**

**give any warranty for that.**

*Q* **Okay. So if there's any customer complaints to**

**be had for watches that Grand Time Corporation sells,**

**it's Grand Time's Corporation to deal with those**

**customers?**

*A.* **This is --**

**THE REPORTER: I'm sorry?**

*A.* **This is up to them to deal with this. I can't**

**tell them. I can't dictate them.**[20]


(b) WFI operated as a contract manufacturer for GTC and produced custom "Just Bling"

orders for GTC:

"Q. Did Grand Time ever give you samples of

what they wanted manufactured?

A. For reference, not sample, but for reference.


Q. Okay.

A. They gave us a watch and some e-mails, some

e-mail pictures.

Q. Right. And Grand Time instructed you that it

---

[20] See Exhibit E, Bhudwani Non-Confidential Dep. at 53.

wanted the Just Bling watches to look like those samples?

A.  At that time they didn't say specifically that we weren't like Just Bling, you know, because Just Bling didn't exist -- exist at that time.  Just Bling name didn't exist even at that time.  They give us a watch.  This is what evidence, and similar type of watch we want.

Q.  Okay.  So when did they first give you these samples?

MR. FEIN:  Object to the form of the question.  As to identification samples, vague.

MR. WILSON:  I'll strike the question.

Q.  (BY MR. WILSON)  When did they first give you the watch samples that you just testified to?

MR. FEIN:  Same objection.

A.  It was a reference, it was not a sample.

Q.  (BY MR. WILSON)  Okay.  Why were they giving you the references?

A.  Just to show us that, We want this kind of watches to be made.

Q.  Okay.

A.  It wasn't not Just Bling's watch.  It was their

watch.  This is kind -- some other brand.

Q.     So would you agree with me that if they're

giving you samples they're intending you to manufacture

a certain type watch for them?

A.     Yes.  Reference, it's -- it was only reference

that they gave.

**Q.     Okay.  So these weren't -- these watches were**

**all custom; I mean, Just Bling watches are custom**

**watches?**

**MR. FEIN:  Objection.**

**A.     Custom."**

…

"Q.     (BY MR. WILSON)  **What customizations did you do**

**for Grand Time related to the "Just Bling" mark?**

**MR. FEIN:  Objection; asked and answered.**

**A.     By customize I mean that they place their order**

**on a paper giving all the details, and that is how we**

**according to go with those orders --**

**Q.     (BY MR. WILSON)  You previously -- go ahead.**

**A.     and produced the orders.  If they place an**

**order on telephone or even otherwise, we fulfill all**

**conditions.  As a manufacturer this is our job, and**

*that's what we do."*[21]

(c) WFI maintains no electronic materials, marketing materials or Internet websites bearing the mark "Just Bling".

> *"Q.     Okay.  So you don't have any electronic*
>
> *materials, marketing materials, or Internet websites*
>
> *bearing the "Just Bling" mark?*
>
> *A.     At this moment I don't have.*
>
> *Q.     Which is it, you don't have it, or you don't*
>
> *remember?*
>
> *A.     We don't have even in the first instant.  We*
>
> *don't possess that*.[22]

(d) WFI does not label any custom watches it sold to GTC; therefore, end users have no way of association WFI with any "Just Bling" product.

> Q.     All right.  I'll strike that until I have the
>
> ones to show you.
>
> So on the watch itself that you sold to
>
> Grand Time Corporation, Watch Factory did not place the
>
> name "Watch Factory, Inc." on the watches you sold to
>
> Grand Time Corporation, or as you know we call them
>
> "Watch Gallery", you did not put the name "Watch
>
> Factory" or any derivative of the word "Watch Factory,

---

[21] See Exhibit E, Bhudwani Non-Confidential Dep. at 62.
[22] See Exhibit E, Bhudwani Non-Confidential Dep. at 72.

Inc." on the watch itself?

A.    We can't put anything on the watch, but when

these cartons come from China, then our name is written

 on the cartons.

Q.    So there's no name on the watches

themselves -- well, strike that.  Let me rephrase it.

There's no way to tell by handling, holding

up a watch that it came from Watch Factory, Inc.?

MR. FEIN:  Object; form, vague.

A.    Those people who are in the business for a long

time, they can discern it.  They can tell about it.

Q.    (BY MR. WILSON)  Okay.  ***But the customers***

***wouldn't know that it came from Watch Factory?***

***A.    End user doesn't know.***[23]


(e) WFI acknowledges and does not object to GTC creating its "justbling.com" website, a website in operation to this very day to sell GTC "Just Bling" product. GTC's expert Molly Richard commented on this fact as follows:

"I have reviewed the manner in which the parties sold and promoted the JUST BLING watches and in my opinion, Grand Time Corporation's actions were more consistent with a brand owner than the actions of Watch Factory.  For instance, Grand Time registered the domain name www.justblingwatch.com and began

---

[23] See Exhibit E, Bhudwani Non-Confidential Dep. at .74.

using that domain name to build a website that actively promoted the JUST BLING brand. On May 30, 2007, Grand Time told Watch Factory that the website at that domain had gone live[24]. In my experience, if Watch Factory had believed that it was the owner of the brand JUST BLING, Watch Factory would have immediately objected to Grand Time's ownership and use of that domain name."[25]

WFI never objected, but instead allowed GTC to invest time and effort in developing the justblingwatch.com domain and the "Just Bling" branded:

> Q.    (BY MR. WILSON)  When did you become aware that
>
>         Grand Time Corporation had purchased the domain
>
>         justblingwatches.com?
>
> THE INTERPRETER:  Domain dot, which one?
>
> Q.    (BY MR. WILSON)  Justblingwatches.com,
>
>         justblingwatches.com.
>
> A.    I never came to know because they never told
>
>         me.  And when we'd meet each other occasionally, then we
>
>         would discuss this matter, and they would say -- and
>
>         that we plan to make a website.  When we made it, I
>
>         don't know.
>
> ***Q.    Okay.  So it's your testimony, for***
>
> ***clarification, that you knew Grand Time was going to***

---

[24] See Exhibit G, GT 01055.

[25] See Exhibit F, Expert Report of Molly Buck Richard, Page 3, Last Paragraph.

*create a website for Just Bling watches?*

*MR. FEIN: Objection; mischaracterizes the*

    *previous testimony.*

*A.     Yes.*

Q.    (BY MR. WILSON) Okay. Do you remember when

    you became aware of that?

A.    At this moment I don't.

*Q.    What did you do when you became aware that they*

    *were going to create a website called*

    *justblingwatches.com?*

*A.    What can I do?*

*Q.    So you did not object to them creating a*
    *website called justbling.com -- Justblingwatches.com?*

*A    There is no problem with making a website. So*

    *it was not a big deal.*

Q.    So you had no objections to them marketing the

    Just Bling watches as their own? And for clarification,

    we're talking Watch Gallery, Grand Time Corporation.

A.    *They were our customers and we gave this name*

    *to them and they were using our name. If they are*

    *promoting our name, so we have no objection. But it*

    *doesn't mean they should own this name.*

*Q.    All right. But you allowed them to use your*

    *name without objections?*

> ***A.***      ***Yes.***[26]

(f)      WFI, as the alleged owner of the "Just Bling" mark states that is has no "guidelines" for how customers are to use the "Just Bling" mark, an act inconsistent with a mark owner:

> A.      What kind of guidelines?
>
> Q.      (BY MR. WILSON)  Trademark guidelines.
>
> MR. FEIN:  Objection; asked and answered.
>
> A.      They should know about these guidelines already.
>
> Q.      (BY MR. WILSON)  Okay.  ***Do you have written guidelines that you provided to Grand Time?***
>
> ***A.***      ***Nothing of the sort.***
>
> ***Q.***      ***So no written guidelines?***
>
> ***A***      ***No.***[27]

13.      The relationship between GTC and WFI was one where WFI acted primarily as a contract manufacturer for GTC's watches:  "Prior to manufacturing the JUST BLING watches, Watch Factory had manufactured other watches for Grand Time, including the GOLDEN and GOLDEN CLASSIC watches.  It is my understanding that prior to manufacturing the JUST BLING watches Watch Factory had not previously manufactured watches with diamonds.  In pleadings filed in this case, Watch Factory has described the relationship of the parties as one where they

---

[26] See Exhibit E, Bhudwani Non-Confidential Dep. at 85.
[27] See Exhibit E, Bhudwani Non-Confidential Dep. at 90.

had an exclusive contractual relationship.[28]  In my opinion, this is consistent with Grand Time's position that Watch Factory was their contact manufacturer for the JUST BLING watches.  In my experience, a factory that makes watches for another party on contract is not the trademark owner."[29]

"Q.     You referenced all trademark responsibilities.

        Can you be more specific what you mean by all

         trademark responsibilities?

A.      Well, basically, we are like the contact point

        for the consumer for the brand, Just Bling.  We are who

        they associate with the brand.  We warranty and service

        all Just Bling watches.  We host the website.  We do all

        marketing efforts related to the brand, Just Bling.  By

        we, I mean Grand Time.  Grand Time is the one that

        decides which models and styles of watches are

        manufactured, produced, sold.  We have -- Grand Time is

        the one that handles all quality issues.  We strive to

        obtain the best quality for our watches.  That's a few of

         the responsibilities.

Q.      Do you have -- do you know of any others?

A.      We also hold responsibility for making sure the

        image of the brand is true and proper for the public,

        that there's -- the public isn't deceived in any way by

---

[28] See paragraph 33 of Defendant Watch Factory's Response to Plaintiff's Partial Motion to Dismiss.

[29] See Exhibit F, Expert Report of Molly Buck Richard, Page 2, Last Paragraph.

just what Just Bling is.

We are also responsible for making sure that

all of our resellers, our customers, are selling to the

general public in a correct way.  We monitor that all the

time, make sure that they are selling Just Bling with the

proper logo, the proper descriptions, requirements, using

correct images.

I might have already said this, but we warranty

all the watches; Just Bling warrants them; and Grand Time

also separately warrants them as well, and services them."[30]

14.     For the aforementioned reasons, GTC requests that the Court grant GTC's Motion for

Summary Judgment as to WFI's Lanham Act Unfair Competition Claim.

## V.

## COUNT III.

## UNFAIR COMPETITION

## (SECOND OF ACTION – TEXAS)

15.     Under Texas law, unfair competition "is the umbrella for all statutory and nonstatutory

causes of action arising out of business conduct which is contrary to honest practice in industrial

or commercial matters.  *Taylor Pub. Co. v. Jostens*, 216 F.3d 465,486 (5th Cir. 2000).  To

recover on this tort, WFI must show an illegal act by GTC which interfered with the plaintiff's

---

[30] See Exhibit H, Shabeena Meghani Confidential Dep. at 70.

ability to conduct his business. *Id.* The illegal act must constitute at least an independent tort if not a violation of criminal law. *Id.*

16.     WFI's Unfair Competition claims, both under the Lanham Act and Texas law, arise from the same factual predicate.  As such, both Unfair Competition claims may treated by this Court as a single cause of action and dismiss them in tandem along with the Trade Secret Misappropriation claim above. *See Fast Capital Mktg., LLC. v. Fast Capital LLC*, 2008 U.S. Dist. LEXIS 103988, 27-52 (S.D. Tex. Dec. 24, 2008); *Abernathy-Thomas.*

*17.*     WFI has stated a claim for unfair competition under Texas law; it has pled facts in support of an allegation that GTC acted illegally and that its illegal conduct interfered with WFI's ability to conduct business.  Concerning the illegal act, WFI has alleged that GTC used business transactions with WFI to appropriate the "Just Bling" name and marketing strategy, which WFI created by expending its inventiveness, time, and resources.[31]   As to interference with its business ability, WFI has alleged that GTC's illegal conduct infringed its rights and caused it to suffer damages.

18.     Given that GTC is the owner of the mark, and that WFI has no "marketing strategy" and no "trade secrets', as testified to by Mr. Budwani as shown above in this Motion, GTC cannot have infringed WFI's rights or caused illegal conduct:

> Q.     (BY MR. WILSON)  Okay.  So you don't have any
>
>         marketing strategy for --
>
> A.     We don't need that.
>
> Q.     Okay.  So -- but -- so you don't need any
>
>         marketing strategy to market your Just Bling products?

---

[31] See Exhibit A, ECF 32; WFI Counter Complaint, Paragraph 6.

A.     Just Bling name that we can produce.  ***We don't***

***have any specific marketing strategy for any kind of***

***17   parts, any brand of part, we don't have."***[32]

"Q.     What did you do to protect your trade secrets

from Grand Time?

***THE INTERPRETER:  He says there is no***

***secret in this business.  There is no secret.***

Q.     (BY MR. WILSON)  So what trade secret did Grand

Time misappropriate?

*A.*     ***They didn't break -- they didn't violate any***

***trade secrets, but they used of a name and got that***

***product logistic in our name."*** [33]

19.     Assuming for argument purposes only that this Court believes WFI to be the owner of the

"Just Bling" name, then this Court must also find that WFI wholly consented to GTC's use of the

"Just Bling" name, and all sales related thereto, and dismiss these Unfair Competition claims for

it is unconscionable to find otherwise given WFI's apparent consent:

*Q.*     ***What did you do when you became aware that they***

***were going to create a website called***

***justblingwatches.com?***

*A.*     ***What can I do?***

---

[32] See Exhibit E, Budwani Non-Confidential Dep. at 19

[33] See Exhibit E, Budwani Non-Confidential Dep. at 18

> **Q.** *So you did not object to them creating a*
>
> *website called justbling.com -- Justblingwatches.com?*
>
> **A.** *There is no problem with making a website. So*
>
> *it was not a big deal.*
>
> Q. So you had no objections to them marketing the
>
> Just Bling watches as their own? And for clarification,
>
> we're talking Watch Gallery, Grand Time Corporation.
>
> A. *They were our customers and we gave this name*
>
> *to them and they were using our name. If they are*
>
> *promoting our name, so we have no objection. But it*
>
> *doesn't mean they should own this name.*
>
> **Q.** *All right. But you allowed them to use your*
>
> *name without objections?*
>
> **A.** *Yes.[34]*

20.     For the aforementioned reasons, GTC requests that the Court grant GTC's Motion for

Summary Judgment as to WFI's Unfair Competition state claim.

Dated: March 5, 2010.

                                    Respectfully submitted,

                                    */s/ John T. Wilson*
                                    John T. Wilson
                                    State Bar No. 2408284
                                    Michael H, Myers

---

[34] See Exhibit E, Bhudwani Non-Confidential Dep. at 85

State Bar No. 24032779
Myers Wilson P.C.
16610 Dallas Parkway, Suite 2000
Dallas, Texas 75248
Telephone: (972) 248-8080
Telecopier: (972) 248-8088

**ATTORNEYS FOR PLAINTIFF
GRAND TIME CORPORATION**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above motion has been served upon opposing counsel pursuant to Rules of Federal Civil Procedure (First Class U.S. Mail) as indicated below on March 5, 2010:

Eric D. Fein                                    Attorney for Defendant
**ERIC D. FEIN & ASSOCIATES**
3500 Oak Lawn Avenue, Suite 510
Dallas, Texas 75219

*/s/ John T. Wilson*
John T. Wilson